## Case No. 11,196.

### PITTS v. WHITMAN.

[2 Story, 609; 2 Robb, Pat. Cas. 189; Merw. Pat. Inv. 313.] [1]

Circuit Court, D. Maine.   Oct. Term, 1843.

PATENTS—CONSTRUCTION—COMBINATION—RECORD-ING ASSIGNMENTS — VALIDITY — INSTRUC-TION TO JURY.

1. Where the plaintiff, in the specification of his patent, described his invention to be "a new and useful improvement," whereas, in fact, it consisted of a combination of several improvements, distinctly set forth in the specification, it was *held*, that the patent was good, not only for the combination, but for each distinct improvement, so far as it was his invention, and that the descriptive words were to be construed in connection with the specification.

[Cited in Geier v. Goetinger, Case No. 5,299; Emerson v. Hogg, Id. 4,440; Hogg v. Emer-

1 [Reported by William W. Story, Esq. Merw. Pat. Inv. 313, contains only a partial report.]

son, 6 How, (47 U. S.) 483; American Bell Tel. Co. v. Southern Tel. Co., 34 Fed. 805.]
[Cited in brief in Rheem v. Holliday, 16 Pa. St. 350.]

2. Where the plaintiff claimed, as his invention, "the construction and use of an endless apron, divided into troughs and cells, in a machine for cleaning grain, operating substantially in the way described," it was *held*, that the claim was for a combination of the endless apron with the machine for cleaning grain, and that, if the combination were new, it was patentable, although a part of the apparatus were old.
[Cited in Seymour v. Osborne, 11 Wall. (78 U. S.) 555.]

3. Act 1836, c. 357, § 11 [5 Stat. 121], relating to the recording of assignments of patents, is merely directory, for the protection of bona fide purchasers without notice, and does not require the recording of an assignment within three months, as a prerequisite to its validity.
[Cited in Gibson v. Cook, Case No. 5,393; Hall v. Speer, Id. 5,947; Perry v. Corning, Id. 11,004; American Solid Leather Button Co. v. Empire State Nail Co., 47 Fed. 743.]
[Cited in Burke v. Partridge, 58 N. H. 353; Hildreth v. Turner, 17 Ill. 185; Louden v. Birt, 4 Ind. 568; McKernan v. Hite, 6 Ind. 429.]
[See Chambers v. Smith, Case No. 2,582.]

4. It is immaterial whether an assignment of a patent, offered in evidence, was recorded before or after the suit was brought.

5. The court is never bound to give an instruction to a jury on a point of law, in the precise form and manner in which it is put by counsel, but only in such a manner as comports with the real merits and justice of the case.
[Cited in Emerson v. Hogg, Case No. 4,440.]

6. A motion having been made in arrest of judgment in this case, on the ground, that no description of the patent was set forth in the declaration, it was *held*, that the profert of the letters patent made them, when produced, a part of the declaration, and gave the invention all the requisite certainty.
[Cited in brief in La Republique Francaise v. Schultz, 57 Fed. 37.]

This was a case for the infringement of a patent granted to Hiram A. Pitts and John A. Pitts, as inventors of "a new and useful improvement in the machine for threshing and cleaning grain." The patent was dated on the 29th of December, A. D. 1837 [No. 542]. The writ was dated on 3d of October, 1840; and the plaintiff in his declaration alleged an assignment by John A. Pitts to himself of all his (John A. Pitts') right in the invention, for, in, and within the state of Maine; and the breach alleged was, that the defendant [Luther Whitman] after the assignment, unlawfully made, used, and vended the said improvement in the said state of Maine. The cause was tried upon the general issue before the district judge, at the last May term; and a verdict was then taken for the plaintiff.

In order to understand the case, it is necessary to state, that the patent was for "a new and useful improvement in the machine for threshing and cleaning grain," and the specification annexed to the letters-patent was in the following terms: "To all whom it may concern: Be it known, that we, John A. Pitts and Hiram A. Pitts, of Winthrop, in the county of Kennebec and state of Maine, have invented a new and improved combination of machinery for separating grain from the straw and chaff, as it proceeds from the threshing machine; and we do hereby declare, that the following is a full and exact description thereof." The specification then describes the invention, referring to an accompanying drawing. The claim was as follows: "(1) We claim as our invention the construction and use of an endless apron, divided into troughs or cells, in a machine for cleaning grain, operating substantially in the way described; (2) we claim also the revolving rake for shaking out the straw, and the roller for throwing it off the machine, in combination with such a revolving apron, as set forth; (3) we claim the guard slats, E, in combination with a belt constructed substantially as above described; and (4) the combination of the additional sieve and shoe with the elevator for carrying up the light grain in the manner and for the purpose herein set forth."

A motion was afterwards made, on behalf of the defendant, in arrest of judgment, and, also, for a new trial, and was argued at the present term, by—

Mr. Preble and Samuel Fessenden, for defendant.

Codman & Fox, for plaintiff.

The motion in arrest of judgment was substantially as follows: "(1) Because it is not alleged in said writ what is the new and useful improvements in the machine for threshing and cleaning grain, which the plaintiff claims to have invented, and which he alleges, that the defendant has violated. (2) Because the plaintiff has not, in his said writ and declaration, any where set forth what he does claim as his invention, or the extent of his claims. (3) Because the plaintiff, in his said writ and declaration, has not set forth, or in any manner described the new and useful improvement in the machine for threshing and cleaning grain, which he claims as his invention."

The motion for a new trial was founded upon the following grounds stated by the defendant: "The plaintiff offered in evidence a deed from John A. Pitts to the plaintiff, dated April 17, 1839, and recorded in the patent office, April 19, 1841; to the admission of which the plaintiff objected, for the reason, that the said deed was not recorded within three months from its date, and because it was not recorded until long after the action was commenced. But the judge admitted it as evidence to the jury, and overruled the objection. For which erroneous ruling, the defendant moves, that the verdict be set aside and a new trial be granted. The counsel for the defendant contended, that by his claim the plaintiff claimed, that John A. Pitts and Hiram A. Pitts did claim to be the inventors of said endless apron, so as aforesaid constructed, i. e. divided into troughs or

cells, in a machine for cleaning grain. and operating substantially in the way described, and that if, in fact, they were not the inventors of an endless apron divided into troughs or cells, but were the inventors only of an application of such an apron to a machine for threshing and cleaning grain in the way described, then, that their claim was too broad, and therefore void. And they contended further, that if. in fact, they were not the inventors of an endless apron, divided into troughs or cells, then the application of it to a machine for threshing and cleaning grain substantially in the way described, was not the subject of a patent, as an application of an old machine to a new use or purpose was not patentable. And the judge was requested to give the construction contended for by the defendant's counsel, to the said claim; but the judge refused, and ruled, that the claim could not, and ought not to be so construed. That the true construction was that the said Pittses did not claim to be the inventors of an endless apron or an endless apron of troughs or cells, but that they claimed it only in a machine for threshing and cleaning grain, operating substantially in the way described; and that their claim was good and valid, as the inventors of its application to such a machine in the manner described. And for this ruling, which the defendant contends is erroneous, he moves the court for a new trial. The counsel for the defendant further contended, if an endless belt of troughs or cells was known and used at the time of, and prior to the supposed invention of said Pitts & Pitts, then the mere application of an endless belt of troughs or cells to the new purpose of separating straw and grain, in a machine for threshing and cleaning grain. is not the subject of a patent, and any patent taken out for the use of such a belt for that purpose is void. The judge declined to give such instructions, for which cause the defendant moves for a new trial. The counsel for the defendant further contended. that, if the claim of the plaintiff to the construction and use of an endless belt, with troughs or cells, embraces any other different form substantially of construction, than the one by him particularly specified, the claim. in that case, would be too broad, and the action could not be sustained. This instruction the judge declined to give. For which cause, also, the plaintiff moves for a new trial."

There was also an exception taken to another supposed ruling of the judge at the trial, which was afterwards abandoned, as it turned out to be incorrectly stated, and therefore it is here omitted.

Preble & Fessenden, for defendant, in their argument, mainly relied upon the grounds stated in the foregoing motions. They cited Patent Act 1836, c. 357, § 11; Wyeth v. Stone [Case No. 18,107]; Prouty v. Draper [Id. 11,-446]; s. c., 16 Pet. [41 U. S.] 336.

Codman & Fox, for plaintiff, argued as follows: To the objection, that plaintiff cannot maintain this action, because his deed from his co-patentee was not recorded within three months, and not till long after this suit was commenced, the answer is, that it is not necessary as between these parties. The defendant does not claim title by purchase, extent of execution, or otherwise; he resists the validity of the patent. It is enough, that it was recorded, before it was offered in evidence. The object of the requirement of the statute. that such a record should be made within three months, was to protect subsequent purchasers, &c. and to give sufficient time for first purchasers to have their deed recorded. The case of Wyeth v. Stone [supra], cited by defendant, does not apply to this case. It was based upon the statute of 1793 [1 Stat. 318], which, in terms and substance, is materially different from the statute of 1836. See U. S. v. Slade [Case No. 16,-312]; Prescott v. Pettee, 3 Pick. 331; Welsh v. Joy, 13 Pick. 477, Emerson v. Towle, 5 Greenl. 197. Under the general registry statute of Massachusetts and Maine, it has been repeatedly held, and is well settled law, that notice or even possession is equivalent to registry. Priest v. Rice, 1 Pick. 165; and see Brooks v. Byam [Case No. 1,947]. As to the motion to set aside the verdict, we are unable to perceive any just ground of support for either branch of it; it is believed to be in strict conformity with both law and evidence. Moreover, there is no report of the evidence, and we believe that this court cannot entertain the motion to set aside the verdict on the ground of its being against the evidence.

STORY, Circuit Justice. There is no ground to support the motion in arrest of judgment, which indeed ought properly to be heard after the motion for a new trial, which, if granted, might supersede the other motion. The short answer to be given to the motion in arrest of judgment is, that the profert of the letters-patent (of which the specification constitutes a part,) makes the letters-patent, when produced, a part of the declaration, and so gives all his certainty as to the invention and improvement patented, which is required by law. It would indeed be more formal to annex a copy of the letters-patent and specification to the declaration, and to refer thereto in the declaration. But the common practice is according to the declaration in the present case; and there seems to be no substantial objection to it.

The first objection, taken upon the motion for a new trial is, that the deed of assignment from John A. Pitts to the plaintiff. dated on the 17th of April, 1838, was not recorded in the patent office until the 19th of April, 1841, after the present suit was commenced; whereas it ought to have been recorded within three months after the execution thereof. By the patent act of 1793 (c. 55, § 4) every assignment, when recorded in

the office of the secretary of state, was good to pass the title of the inventor, both as to right and responsibility; but no time whatever was prescribed within which the assignment was required to be made. By the eleventh section of the act of 1836 (chapter 357) it is provided, "that every patent shall be assignable in law, either as to the whole interest or any undivided part thereof, by any instrument in writing; which assignment, and also every grant and conveyance of an exclusive right under any patent to make and use, and to grant to others to make and use, the thing patented within and throughout any specified portion of the United States, shall be recorded in the patent office within three months from the execution thereof." Now, it is observable, that there are no words in this enactment, which declare, that the assignment, if not recorded, shall be utterly void; and the question, therefore, is, whether it is to be construed as indispensable to the validity of an assignment, that it should be recorded within the three months, as a sine qua non; or whether the statute is merely directory for the protection of purchasers. Upon the best reflection, which I have been able to bestow upon the subject, my opinion is, that the latter is the true interpretation and object of the provision. My reasons for this opinion are, the inconvenience, and difficulty, and mischiefs, which would arise upon any other construction. In the first place, it is difficult to say, why, as between the patentee and the assignee, the assignment ought not to be held good as a subsisting contract and conveyance, although it is never recorded by accident, or mistake, or design. Suppose the patentee has assigned his whole right to the assignee for a full and adequate consideration, and the assignment is not recorded within the three months, and the assignee should make and use the patented machine afterwards; could the patentee maintain a suit against the assignee for such making or use as a breach of the patent, as if he had never parted with his right? This would seem to be most inequitable and unjust; and yet if the assignment became a nullity and utterly void by the non-recording within the three months, it would seem to follow as a legitimate consequence, that such suit would be maintainable. So strong is the objection to such a conclusion, that the learned counsel for the defendant admitted at the argument, that as between the patentee and the assignee. the assignment would be good, notwithstanding the omission to record it. If so, then it would seem difficult to see why the assignment ought not to be held equally valid against a mere wrong-doer, piratically invading the patent right.

Let us take another case. Could the patentee maintain a suit against a mere wrong-doer, after the assignment was made, and he had thereby parted with all his interest, if the assignment was not duly recorded? Cer-

tainly it must be conceded, that he could not, if the assignment did not thereby become a mere nullity, but was valid as between himself and the assignee; for then there could accrue no damage to the patentee, and no infringement of his rights under the patent. Then could the assignee, in such a case, maintain a suit for the infringement of his rights under the assignment? If he could not, then he would have rights without any remedy. Nay, as upon this supposition, neither the patentee nor the assignee could maintain any suit for an infringement of the patent, the patent right itself would be utterly extinguished, in point of law, for all transferable purposes. Again; could the assignee, in such a case, maintain a suit for a subsequent infringement against the patentee? If he could, then the patentee would be in a worse predicament than a mere wrong-doer. If he could not, then the assignment would become, in his hands. in a practical sense worthless, as it would be open to depredations on all sides. On the contrary, if we construe the tenth section of the act to be merely directory, full effect is given to the apparent object of the provision, the protection of purchasers. Why should an assignment be required to be recorded at all? Certainly not for the benefit of the parties, or their privies; but solely for the protection of purchasers, who should become such, bona fide, for a valuable consideration, without notice of any prior assignment. By requiring the recording to be within three months, the act, in effect, allows that full period for the benefit of the assignee, without any imputation or impeachment of his title for laches in the intermediate time. If he fails to record the assignment within the three months, then every subsequent bona fide purchaser has a right to presume, that no assignment has been made within that period. If the assignment has not been recorded until after the three months, a prior purchaser ought, upon the ground of laches, to be preferred to the assignee. If he purchases after the assignment has been recorded, although not within the three months, the purchaser may justly be postponed, upon the ground of mala fides, or constructive notice of the assignment. In this way, as it seems to me, the true object of the provision is obtained, and no injustice is done to any party. In respect to mere wrong-doers, who have no pretence of right or title, it is difficult to see, what ground of policy or principle there can be in giving them the benefit of the objection of the non-recording of the assignment. They violate the patent right with their eyes open; and as they choose to act in fraudem legis, it ought to be no defence, that they meant to defraud or injure the patentee, and not the assignee. Indeed. if the defence were maintainable, it would seem to be wholly immaterial, whether they knew of the assignment or not. In furtherance, then, of right, and justice, and the apparent policy of the act ut res magis

valeat quam pereat, and in the absence of all language importing that the assignment, if unrecorded, shall be deemed void, I construe the provision as to recording to be merely directory, for the protection of bona fide purchasers without notice. And assuming that the recording within the three months is not a prerequisite to the validity of the assignment, it seems to me immaterial (even admitting that a recording at some time is necessary) that it is not made until after the suit is brought. It is like the common case of a deed required by law to be registered, on which the plaintiff founds his title, where it is sufficient, if it be registered before the trial, although after the suit is brought; for it is still admissible in evidence as a deed duly registered.

The next objection taken is to the ruling of the district judge upon the point of the construction of the claim in the specification in the patent. The learned judge ruled "That the true construction of the patent was, that the Pittses did not claim to be the inventors of an endless apron, or an endless apron of troughs or cells. But the true construction must be that they claimed it only in a machine for threshing and cleaning grain, operating substantially in the way described; and that their claim was good and valid as the inventors of its application to such a machine in the manner described." I am of opinion that the construction thus given by the learned judge of the claim of the patentees in the specification is the true one. What is the language of the specification? "We claim as our invention the construction and use of an endless apron, divided into troughs or cells, in a machine for cleaning grain, operating substantially in the way described;" that is, described in the specification. It is, therefore, clear that it was not a claim of an invention of an endless apron of troughs or cells; but of an endless apron of troughs and cells combined with a particular threshing machine, described in the specification. If this combination was new, and invented by the patentees, then it was valid in point of law, which is all that the learned judge purported to state. And this disposes in effect of the next objection; for if the combination was new, it is a patentable matter, although a part of the apparatus might have been applied to similar purposes in other and different machines. Under such circumstances it would not be a mere application of an old apparatus to a new purpose, but a new combination of machinery, incorporating, in part, an old apparatus for a new purpose.

The third instruction asked and refused by the court is objectionable in several respects. It proceeds upon the assumption of the existence of facts, which it was no part of the duty of the court to assume or affirm. It undertakes to put a construction upon the invention, as claimed by the patentees, which is not (as has been already suggested) correct. It separates the consideration of the endless belt of troughs from the other machinery, with which it was combined, as though it were claimed as a distinct invention, and not in combination, and asks the court to give an instruction founded upon that supposition. It was no part of the duty of the court thus to break up the case into fragments, or to give an instruction as to abstract points, not actually presented by the state of the cause. The like answer may be given for similar reasons to the fourth instruction asked and refused.

The fifth instruction, asked and refused, involved matter of fact, viz. the character of Parsons' machine, and in what respects it was identical with, and in what respects it differed from, the machine of the Pittses, and that of Whitman; and therefore was properly refused; for the learned judge had no right to determine upon any such matters, or to give the instruction prayed for. The instruction upon this point supposed in the motion for a new trial to have been given by him, was in fact (as he states) never given. On the contrary, he gave the instruction in the form and manner, which are stated by the counsel for the plaintiff in their written objection to the motion for a new trial. In short, he left the whole as a matter of fact for the consideration of the jury, with such observations on his own part, as were fit to be submitted by way of commentary on the evidence, for their consideration.

It may here be proper to add, that the court is never bound to give an instruction to a jury upon a point of law, even when pertinent, and relevant to the fact of the case, precisely in the form and manner in which it is put by counsel; for that may sometimes have a tendency to mislead the jury, and withdraw their attention from the merits of the case. All that is the duty of the court, is to give such instructions to the jury in point of law, as clearly arise upon the evidence, and are proper for the consideration of the jury, upon the issue before them, in such terms and in such a manner as shall comport with the real merits and justice of the case, and enable the jury to give a proper verdict in point of law. Having done this, the court has discharged its entire duty, and is not bound to respond to instructions asked, which are of a more general form, or of an abstract nature, or are not necessary for a just decision of the cause.

Before closing this opinion, it is fit to take notice of an objection, raised in the argument at the bar on behalf of the defendant, that the present patent is professedly for "a new and useful improvement," and not for new and useful improvements (in the plural); and that consequently it covers only the whole combination in its entirety; and not the several improvements specified in the claim, separately and distinctly from each other. The conclusion, intended to be de-

duced from this argument. is, that inasmuch as the evidence did not show a violation of the whole combination, but of one only of the asserted improvements, therefore, the present suit is not maintainable. I cannot assent either to the premises, or to the conclusion; and in my judgment, each is unsupportable in point of law. There is, in my judgment, no difficulty in maintaining the validity of a patent (as in the present case), for a machine combining several distinct improvements, each of which is the invention of the patentee, and also of including in the same patent a right to each of these several and distinct improvements. In other words, the patentee may in such a case take out a valid patent for the combination, and also include therein a right to each distinct improvement severally contained in the same machine. Such was the doctrine maintained by this court in Wyeth v. Stone [Case No. 18,107], and it stands confirmed by the obvious intent of the ninth section of the patent act of 1837, c. 45 [5 Stat. 191], which gives to the patentee a right of action for a piratical use of any one of his invented improvements, which is distinctly stated in his patent, although he may, by mistake, accident, or inadvertence, have claimed others in his specification, of which he was not the inventor.

In construing a patent for an invention we are not to look alone to the descriptive words contained in the letters patent, but we are to construe those words in connection with the specification, which in our law is always annexed to and made a part of the letters patent. Here, indeed, the letters patent described the invention to be "a new and useful improvement (this is the common formulary) in the machine for threshing and cleaning grain;" but then it is afterwards added, "a description whereof is given in the words of the said John A. Pitts and Hiram A. Pitts, in the schedule hereto annexed, and is made a part of these presents." So, that for the nature and character of the improvement and the claim of the invention we are to look to the specification. Now, in the specification, the patentees begin by saying, that they "have invented a new and improved combination of machinery for separating grain from the straw and chaff, as it proceeds from the threshing machine;" so that we here clearly see, that the patentees claim the entire combination of the machinery as new. In the summing up of their invention they claim four distinct improvements in the machinery, as their invention. The words are: "(1) We claim as our invention the construction and use of an endless apron divided into troughs or cells in a machine for cleaning grain, operating substantially in the way described (i. e. in the specification); (2) we claim also the revolving rake for shaking out the straw, and the roller for throwing it off the machine, in combination with such a revolving apron as set forth; (3) we claim

the guard slats, E, in combination with a belt constructed substantially as above described; and (4) the combination of the additional sieve and shoe, with the elevator for carrying up the light grain in the manner and for the purpose herein set forth." It is plain, therefore, that the patentees not only claim the entire machinery in combination, but also the four improvements above enumerated as their invention. And if they are their invention, there is no objection, in point of law, to their claim. And a violation of any one of the specified improvements, without any violation of the others, by the defendant, is sufficient to entitle the patentees, or their assignees, to an action for the infringement. So that in every way, in which I am able to contemplate the case, the motion for a new trial and in arrest of judgment ought to be overruled. The district judge concurs in this opinion, and, therefore, the motion is overruled.

[For other cases involving this patent, see note to Pitts v. Wemple, Case No. 11,194.]

---

PITTSBURG (EVANS v.).    See Cases Nos. 4,567 and 4,568.

PITTSBURG & C. R. CO. (BALTIMORE v.). See Case No. 827.

PITTSBURG, FT. W. & C. R. CO. (KNOWLES v.).    See Case No. 7,899.

PITTSBURGH, The (KELLY v.).    See Case No. 7,674.

PITTSBURGH (OEBRICKE v.).    See Case No. 10,442.

PITTSBURGH (OELRICH v.).    See Case No. 10,442.